

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MOO TOWN DAIRY, L.L.C.,** | § | **CASE NO. 10-43676-R** |
| 20-4909319 | § | **CASE NO. 10-43677-R** |
| 3415 FM 1567 E. | § | |
| Como, TX 75431 | § | |
| **AND** | § | **JOINTLY ADMINISTERED UNDER** |
| **RENE H. COUMANS** | § | **10-43676-R** |
| **D/B/A BELLE VUE DAIRY** | § | |
| xxx-xx-1816 | § | |
| 3415 FM 1567 E. | § | |
| Como, TX 75431 | § | **Chapter 11** |
| | § | |
| **DEBTORS.** | § | |

### FINAL AGREED ORDER REGARDING THE USE OF CASH COLLATERAL

On November 8, 2010, the Court considered the *Debtor's Emergency Motion for Order Authorizing the Interim and Final Use of Cash Collateral* (the "***Motion***," docket no. 4)[1] filed by René H. Coumans d/b/a Belle Vue Dairy and Moo Town Dairy, L.L.C. (collectively, the "***Debtors***").

### Interim Cash Collateral Hearing

The Court held an interim hearing on the Motion on October 26, 2010 and the Court entered its *Agreed Order Authorizing the Interim Use of Cash Collateral* on October 28, 2010 (the "***Interim Order***," docket no. 25). The Court held a final hearing (the "***Hearing***") on the Motion on November 8, 2010. As represented to the Court at the hearing, the Debtors and Bank of the West have consented to the entry of this Order.

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

## Findings of Fact and Conclusions of Law

Having considered the Motion, evidence proffered or presented, and arguments of counsel, the Court hereby finds and concludes as follows:

## Jurisdiction

A.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O).  Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## Notice

B.     Under the circumstances, the notice given by the Debtors of the Motion and the Hearing constitutes due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the local rules of this Court.  No further notice of, or hearing on, the relief sought in the Motion is necessary or required.

## Factual Background

C.     Each of Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") on October 25, 2010 (the "***Petition Date***").

D.     An official committee of unsecured creditors has not currently been appointed in this case.

E.     The Debtors are borrowers under the Credit Agreement dated as of August 7, 2009, among René H. Coumans, Moo Town Dairy, L.L.C., Sonador Dairy, L.L.C., and Bokito Farming, L.L.C. (collectively, the "***Borrowers***") and Bank of the West (as supplemented or amended, the "***Credit Agreement***").  The non-Debtor Borrowers are affiliates of the Debtors.

**Bank of the West's Claims**

F.       The Debtors do not dispute that Bank of the West holds valid, enforceable, and allowable Claims, as defined in § 101 of the Bankruptcy Code, as of the Petition Date.  .

G.       The Debtors acknowledge and stipulate that as of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, under the Prepetition Indebtedness Documents (as defined below) in the aggregate amount of $8,300,811.52 plus accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, other professional fees and disbursements, and other obligations under the Credit Agreement (collectively, the "***Prepetition Obligations***").  The Debtors further acknowledge and stipulate that the Prepetition Obligations include (a) $4,838,311.52 owed under the Livestock Acquisition Facility provided by the Credit Agreement; (b) $1,400,000.00 owed under the Acquisition Feed Line of Credit provided by the Credit Agreement; and (c) $2,062,500.00 owed under the Term Loan provided by the Credit Agreement.  The Debtors acknowledge that the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and that no portion of the Prepetition Obligations or any amounts paid to Bank of the West or applied to the obligations owing under the Credit Agreement prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as that term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

H.       Other than as specifically noted below, the Debtors further acknowledge that the Prepetition Obligations are secured by first priority, valid, binding, perfected and enforceable liens and security interests (the "***Prepetition Liens***") granted by the Debtors to Bank of the West under the Credit Agreement and other documents executed in connection therewith, including, but not limited to, any notes, letter of credit documents, security interests, guarantees, or other agreements of

instruments, (all of the foregoing, together with the Credit Agreement, referred to as the "***Prepetition Indebtedness Documents***") upon and in all of the assets and property of the Debtors whether then owned or thereafter acquired or arising, and all proceeds and products thereof, and all of the equity interests and all related rights with respect to the Debtors (collectively, the "***Prepetition Collateral***"). The Debtors acknowledge that the Prepetition Liens upon the Prepetition Collateral are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that the Debtors assert that Bank of the West has second priority, valid, binding, perfected, and enforceable liens and security interests on the Prepetition Collateral listed on **<u>Exhibit 1</u>** to this Order, second only to the specific creditor listed for each specific piece of Prepetition Collateral on Exhibit 1. Bank of the West reserves its rights with respect to the Prepetition Collateral listed on Exhibit 1, including its rights to challenge the priority, validity, perfection, or enforceability of the liens alleged to be senior to its Prepetition Liens.

I.      The Debtors waive any right to contest the amount of, or to assert any defense, counterclaim or offset with respect to the Prepetition Obligations or (other than as noted above) the validity, priority, or enforceability of the Prepetition Liens on the Prepetition Collateral.

J.      The Debtors further acknowledge that all of the cash of the Borrower in existence on the Petition Date and that is acquired by the Debtors thereafter constitutes cash collateral (the "***Cash Collateral***") within the meaning of § 363(a) of the Bankruptcy Code for the benefit of Bank of the West.

<strong><u>Limited Use of Cash Collateral</u></strong>

K.      The Debtors assert that they require the use of the Cash Collateral of Bank of the West in order to continue their ordinary course business operations and to maintain the value of their

bankruptcy estates. Bank of the West has agreed to permit the Debtors to use the Prepetition Collateral – including Cash Collateral – on the terms and conditions provided for herein, commencing on the date this Order is entered and expiring on January 31, 2011(the "***Period***"). Bank of the West does not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in this Order during the Period.

L.     The Debtors have requested that Bank of the West permit the use of Cash Collateral to provide funds to be used solely for such purposes set forth in the Budget (as defined below).

## **Good Cause Shown**

M.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors' use of Cash Collateral is necessary to preserve the bankruptcy estates.

## **ORDER**

Accordingly, it is therefore ORDERED that:

1.     Any objections to the Motion or entry of this Order that have not previously been resolved or withdrawn, including any reservations of rights therein, are hereby overruled on their merits. To the extent that any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

2.     The Debtors are hereby authorized to use Cash Collateral only as provided in strict accordance with the terms and conditions provided in this Order.

3.     The Debtors shall be permitted to use Cash Collateral solely to pay the expenses described in the expenditures contained in the budget attached hereto as Exhibit 2 (together with any extension or modifications thereof as permitted herein, the "***Budget***") for the Period, solely up to the amounts, at the times and for the purposes identified in the Budget. The Debtors shall not, without the prior written consent of Bank of the West, use Cash Collateral with respect to any single month

in the Budget in an amount in excess of the aggregate amount budgeted for that month, provided however, that there shall be a permitted variance of 10% per line item for any amounts listed in the Budget for a particular month; provided, however, that for exceptional, unanticipated expenditures that are not contemplated by the Budget, the Debtors and Bank of the West may agree that such expenditures, if approved, are not credited against the permitted aggregate variance; provided, further, that solely with respect to the line item for feed, there shall be a permitted variance of 15%. Further, regarding any checks issued by the Debtors within the last five (5) banking days of any Budget period and which check does not clear the bank due to no fault of the Debtors, said check shall be deemed to have been paid during the Budget period in which the check was written.[2]

4.　　The Debtors and Bank of the West may extend the Period, provided that seven (7) days notice and opportunity to object is served out on all interested parties.

5.　　Notwithstanding anything in the Budget or this Order to the contrary, Bank of the West shall retain all rights to object to any motion, application, or other request for relief that relates to the items referred to or covered by the Budget.

6.　　During the pendency of this case, the Debtors may use and sell the Prepetition Collateral and the Adequate Protection Collateral (hereafter defined) only in the ordinary course of their business and shall keep insured and properly care for all tangible Collateral.

### Termination Events/Remedies

7.　　Without any effect on any other provision of this Order, the Debtors' authorization to use Cash Collateral shall terminate upon any Termination Event (as defined below). Termination of the Debtors' right to use Cash Collateral or termination of the automatic stay pursuant to the provisions of this paragraph shall in no manner affect the validity, enforceability, or priority of the

---

[2]  In any reports requested of the Debtors pursuant to paragraph 17 hereof, Debtors shall disclose which, if any, checks should be subject to this sentence.

Adequate Protection Liens (hereafter defined), Superpriority Claims (hereafter defined), or other protections afforded to Bank of the West pursuant to the provisions of Order.

8.      If the Debtors' right to use Cash Collateral has not been previously terminated pursuant to the provisions of this Order, such right may be extended only upon Bank of the West's written consent or Order of the Bankruptcy Court.  Bank of the West shall have absolutely no obligation to agree to such an extension under any circumstances and may elect or not elect to agree to such an extension as it determines in its sole and absolute discretion.

9.      The following shall each constitute a "Termination Event" under this Order with respect to the Debtors' use of Cash Collateral:

> a.      the passing of 5:00 p.m. (prevailing Central Time) on January 31, 2011 (or such later date as may be agreed by the Debtors and Bank of the West) unless ordered otherwise by this Court as noted in the preceding paragraph;
>
> b.      four business days (or such other different period as may be expressly provided herein with respect to a specific term of this Order) after the date on which the Debtor first receives, by fax, email, or physical mail, written notice sent to:
>
> > Robert T. DeMarco
> > DeMarco•Mitchell, PLLC
> > 1225 West 15th Street, Suite 805
> > Plano, Texas, 75075
> >  (f) 972.346.6791
> > robert@demarcomitchell.com
> > mike@demarcomitchell.com[3]
>
> from Bank of the West of the Debtors' failure to comply with any terms of this Order, unless such failure is cured within such period or the Debtors file within such period an emergency motion contesting the extent and nature of the Termination Event; provided, however, that the Debtors shall not have any cure period for the $50,000 adequate protection payment due on January 20, 2011;
>
> c.      entry of an order, without the prior written consent of Bank of the West, (i) converting any of these chapter 11 cases to a case under chapter 7 of the

---

[3] Notice shall be sent to the Debtors by fax, email, and physical mail to these addresses, but notice shall be effective and the Debtors' cure period shall begin to run upon the Debtors' first receipt via any of these delivery methods.

Bankruptcy Code; (ii) dismissing any of these chapter 11 cases; (iii) appointing a trustee under chapter 7 or chapter 11 of the Bankruptcy Code or appointing an examiner with expanded powers (powers beyond those set forth in §§ 1106(a)(3) and (4) in any of these chapter 11 cases); or (iv) reversing, vacating, or otherwise amending, supplementing or modifying this Order or (v) granting relief from the automatic stay to any creditor holding or asserting a lien or reclamation claim of the Prepetition Collateral;

d. except as permitted under this Order, the commencement of any proceeding by the Debtors seeking the invalidation, subordination, or other challenging of the Superpriority Claims or Adequate Protection Liens granted to Bank of the West under this Order (provided, however, that the Debtors reserve the right to contest whether there has been a Diminution in Value (hereafter defined).

e. except as permitted under this Order, the entry of an order approving use of Cash Collateral (other than application related to this Order), or any financing or loan secured by liens, which are senior to or *pari passu* with Bank of the West's liens on the Prepetition Collateral, without the prior written approval of Bank of the West;

f. the closing of a sale of substantially all of the Debtors' assets, whether done pursuant to one transaction or a series of transactions;

g. except as permitted under this Order, the entry of an order approving a motion in these chapter 11 cases without Bank of the West's prior written consent: (i) to obtain financing under § 364 of the Bankruptcy Code from any person or entity other than Bank of the West that involves liens that are senior to or *pari passu* with the liens of Bank of the West; (ii) to grant any lien that is senior to or *pari passu* with the liens of Bank of the West; (iii) to recover from any portion of the Prepetition Collateral any costs or expenses of preserving or disposing of collateral under § 506(c) of the Bankruptcy Code; or

h. the Debtors shall have not by January 1, 2011 filed a plan of reorganization and disclosure statement that has a reasonable prospect of being confirmed in a reasonable period of time.

### Adequate Protection to Bank of the West

10. Bank of the West is entitled, pursuant to §§ 361, 362, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral on account of the Debtors' use of the Prepetition Collateral and any other diminution in value of the Prepetition Collateral (each such diminution, a "***Diminution in Value***").

11.     As adequate protection to Bank of the West for the aggregate Diminution in Value, Bank of the West shall be and hereby is granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or Bank of the West of mortgages, security agreements, pledge agreements, financing statement, or otherwise), the following:

(a.)     Adequate Protection Liens.     To the extent of any failure of adequate protection, Bank of the West shall have valid and perfected additional and replacement security interests in, and liens upon (the "*Adequate Protection Liens*"), all of the Debtors' right, title and interest in, to, and under (a) all assets in which Bank of the West held validly perfected liens as of the Petition Date; (b) all of the Debtors' now owned and after-acquired real and personal property, assets and rights, of any kind or nature, wherever located, including, without limitation, contracts, property, plant, equipment, livestock, general intangibles, documents, instruments, interests in leaseholds, patents, copyrights, trademarks, trade names, and all other intellectual property, capital stock of subsidiaries, cash, and cash collateral of the Debtors (whether maintained with Bank of the West or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise, but not including causes of action brought against Bank of the West), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing (collectively, the "*Adequate Protection Collateral*").  The Adequate Protection Liens shall be inferior and subordinate to (i) valid, perfected and enforceable prepetition liens (if any) that are senior to Bank of the West's security interests and liens as of the Petition Date (including any prior perfected liens of taxing authorities); and (ii) valid and unavoidable liens that are perfected after the Petition Date (if any) to the extent permitted by § 546(b) of the Bankruptcy Code that are senior in priority to Bank of the West's security interest and liens.

(b.) <u>Superpriority Claims</u>. To the extent of any Diminution of Value, Bank of the West shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by §§ 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "***Superpriority Claims***"). The Superpriority Claims shall, subject to the Carve-Out (as defined below), be allowed claims against each Debtor (jointly and severally) with priority over any and all administrative expenses and unsecured claims against the Debtors, now existing or hereafter arising, of any kind, whatsoever, including without limitation, all other administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any provision of the Bankruptcy Code, including, without limitation, §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment. Other than the Carve-Out, no cost or expense of administration under §§ 105, 503, or 507 of the Bankruptcy Code or otherwise, including any such costs or expense resulting from or arising after the conversion of any of these cases under § 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the Superpriority Claims granted hereunder.

(c.) <u>Payments</u>. The Debtors shall pay Bank of the West the sum of $50,000.00 on January 20, 2011. The payment shall be made by wire transfer pursuant to wiring instructions to be provided by Bank of the West. If the payment is not timely made, the Debtors shall commence immediately an orderly liquidation of their assets and shall cooperate with Bank of the West in the liquidation.

(d.) <u>Herd levels and age groupings</u>. Unless Bank of the West agrees otherwise in writing in its sole discretion, the Debtors shall maintain throughout the term of this Order (a) not fewer than 2400 milk and dry cows; (b) not fewer than 2250 heifers; and (c) age groupings of the herd consistent with the age groupings shown on the Dairy Appraisal Report dated August 11, 2010,

attached hereto as **Exhibit 3**.  In addition, the Debtors shall not cull more than 45 milk cows per month unless Bank of the West agrees otherwise in writing in its sole discretion.

### Carve-Out

12.    As used herein, the term "*Carve-Out*" shall mean (i) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "*Statutory Fees*"), and (ii) the allowed fees and expenses of the professionals engaged by the Debtors (including, without limitation, DeMarco Mitchell, PLLC, and including any professionals retained as "ordinary course professionals") (regardless of whether incurred prior to or after a Termination Event and regardless of whether incurred prior to or after the Petition Date), in an amount not to exceed $25,000 in the aggregate; (iii) the allowed fees and expenses of the professionals engaged by any official committee of unsecured creditors appointed in these cases, if any (regardless of whether incurred prior to or after a Termination Event), in an amount not to exceed $15,000 in the aggregate.

13.    The Carve-Out shall not include, and Cash Collateral shall not be used for, the payment or reimbursement of any fees or disbursements of the Debtors' professionals (or any professionals of the Committee), or any trustee appointed in these chapter 11 cases, incurred in connection with the, assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief relating to: (i) any action asserting claims pursuant to § 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against Bank of the West with respect to the validity and extent of the obligations hereunder or the obligations under the Prepetition Indebtedness Documents, or the validity, extent and priority of the liens and security interests securing the obligations hereunder or the obligations under the

Prepetition Indebtedness Documents; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, Bank of the West's liens on and security interests in the Adequate Protection Collateral or Prepetition Collateral; or (iii) preventing, hindering or delaying (whether, directly or indirectly) Bank of the West in respect of its liens and security interests in the Adequate Protection Collateral or Prepetition Collateral.

14. Notwithstanding the foregoing restriction, up to an aggregate of $3,000 of Cash Collateral may be used to pay professional fees and expenses incurred by any official committee of unsecured creditors appointed in these cases to investigate the extent, validity and priority of claims and liens of Bank of the West relating to the Prepetition Indebtedness Documents, but not to challenge any liens or claims under Prepetition Indebtedness Documents.

15. The dollar amounts available to be paid under the Carve-Out shall be deemed reduced to the extent proceeds of any Prepetition Collateral or Adequate Protection Collateral are used to pay (i) fees or expenses of any professionals arising from and after the Petition Date and (ii) any retainer paid to any professional. Bank of the West retains any and all rights as a party-in-interest to object to any claims of any professionals.

16. Nothing in this Order shall be construed as approving the employment or compensation of any of the professionals set forth in the Budget or included in the definition of "Carve-Out," and such retention and compensation shall remain subject to the terms of §§ 327, 328, 329, 330, and/or other applicable sections of the Bankruptcy Code.

## **Reporting Requirements**

17. The Debtors shall provide to Bank of the West the following specific items:

    a.      all reports filed by the Debtors with the bankruptcy court;

    b.      all reports required to be delivered to Bank of the West by the Debtors under the Prepetition Indebtedness Documents;

     c.      a monthly report with the information requested in the document attached hereto as **<u>Exhibit 4</u>**, to be provided no later than the 10th of the following month (e.g., October report due on November 10; November report due on December 10);

     d.      electronic reporting access to the Debtors' debtor-in-possession accounts such that Bank of the West can monitor funds transfers into and out of the account or accounts; and

     e.      such other information that Bank of the West may reasonably request.

18.     The Debtors shall promptly, upon reasonable request, make available to Bank of the West or any of its agents (including professionals) supporting documentation for all receipts and expenditures, including, but not limited to, bank statements, contracts, invoices, copies of checks (including milk checks) and general ledgers.

### <u>Other</u>

19.     The Debtors are authorized and directed to establish and maintain property/casualty insurance coverage on the Prepetition Collateral and the Adequate Protection Collateral for the full replacement value therefore and to cause Bank of the West to be named as a "lender loss payee" of the insurance policies. The Debtors shall also maintain adequate general liability insurance and shall name Bank of the West as an additional insured on all insurance policies. The Debtors shall provide Bank of the West copies of all insurance policies – to the extent not already provided to Bank of the West following the Interim Order – within five business days of the later of (i) the entry of this Order or (ii) the issuance of any new or modified insurance policy.

20.     Bank of the West shall have the right to credit-bid the amount of its claims during a sale of the Prepetition Collateral or the Adequate Protection Collateral, including without limitation a sale occurring pursuant to § 363 or a sale included as part of any plan subject to confirmation under § 1129(b)(2)(A)(iii). Bank of the West's credit rights shall in either event be governed by § 363(k).

21.     The Prepetition Collateral and Bank of the West shall not be subject to any surcharge pursuant to §§ 506(c) or 105(a) of the Bankruptcy Code, or otherwise, by the Debtors, any successor to the Debtors, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property, whether appointed in a chapter 11 case or chapter 7 case, or any other party-in-interest.

22.     The Debtors shall provide (and shall continue to so provide) Bank of the West and any professional retained by Bank of the West with reasonable access during normal business hours to (i) the Debtors' premises, management and financial advisors, (ii) any and all books, records, engineering reports, documents and information relevant to the Debtors' business operations, and (iii) any other information or report regarding the Debtors or their chapter 11 cases that Bank of the West may from time to time request.  Failure to provide access pursuant to this paragraph within 48 hours of a request being made by Bank of the West, without good cause, shall result in an immediate default and constitute a Termination Event under the terms of this Order.

23.     The entry of this Order shall not prejudice or limit the rights of Bank of the West or any other party-in-interest to seek additional relief with respect to use of Cash Collateral or for adequate protection.  Nothing included herein shall prejudice, impair, or otherwise affect Bank of the West's rights to seek any other or supplemental relief in respect of the Debtors' bankruptcy estates, including, without limitation, any right of Bank of the West to seek entry of an order, upon motion, after notice and a hearing, for relief from the automatic stay, or to contest the granting of any liens on or security interests in all or any part of the Prepetition Collateral or to appear and be heard in respect of any other matter arising in or related to these chapter 11 cases.  Furthermore, entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action that Bank of the West may have against any third parties.

24.     Nothing contained in this Order or otherwise shall constitute nor be deemed to constitute, directly or indirectly, by implication or otherwise, a waiver by Bank of the West of its right to assert that the Debtors are obligated under the Prepetition Indebtedness Documents to pay (i) the default interest rates specified therein, (ii) interest on interest, or (iii) any fees, costs and other charges specified therein.

25.     Nothing contained in this Order shall be deemed to terminate, modify, or release any obligations of the Borrowers or any guarantors with respect to the Prepetition Obligations and the Prepetition Indebtedness Documents, or restrict any rights of Bank of the West with respect to the non-Debtor borrowers.

26.     Bank of the West, by entering into this Order and consenting or not consenting to the Debtors' use of cash collateral, shall not (i) have liability to any third party nor shall Bank of the West be deemed to be in control of the operations of the Debtors or the Borrowers or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or the Borrowers (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, their creditors, or their bankruptcy estates, or the Borrowers and (ii) Bank of the West's relationship with the Debtors and Borrowers shall not constitute nor be deemed to constitute a joint venture or partnership with any of the Debtors or Borrowers.

27.     Based on the recitals and in accordance with § 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacatur shall affect the validity, enforceability or priority of any of the Adequate Protection Liens or the Superpriority Claims, or any other obligation of any Debtor to Bank of the West.

28. The failure of Bank of the West to seek relief or otherwise exercise its rights and remedies under the Prepetition Indebtedness Documents or this Order shall not constitute a waiver of any of its rights thereunder, hereunder, or otherwise.

29. The provisions of this Order shall be binding upon and shall inure to the benefit of Bank of the West, the Borrowers, and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

30. Unless and until the Prepetition Obligations have been indefeasibly repaid in full, in cash, the protections afforded to Bank of the West under this Order, and any actions taken pursuant thereto shall survive the entry of an order dismissing these chapter 11 cases or converting these chapter 11 cases into a case pursuant to chapter 7 of the Bankruptcy Code, and the Adequate Protection Liens in and to the Adequate Protection Collateral and the Superpriority Claims shall continue in these proceedings and in any such successor case, and the Adequate Protection Liens and Superpriority Claims shall maintain their priority as provided by this Order until the Prepetition Obligations have been indefeasibly paid in full in cash.

31. Notwithstanding anything contained herein to the contrary, the extent, validity, perfection and enforceability of the Prepetition Obligations and Bank of the West's liens on the Prepetition Collateral are for all purposes subject to the rights of any party-in-interest with proper standing, other than the Debtors, to file an objection or complaint, seeking to invalidate, subordinate or otherwise challenge the Prepetition Obligations and/or Bank of the West's pre-petition liens upon and security interests in the Prepetition Collateral; provided, however, that if such complaint is not filed by such parties-in-interest with proper standing to assert such complaint or the Committee, within 45 days following the date of service of a notice of the 45 day deadline, then (i) the Prepetition Obligations and Bank of the West's security interests in and liens upon the Prepetition Collateral shall be

recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Prepetition Collateral to the extent provided herein, and the Prepetition Obligations shall be allowed in the full amount specified above pursuant to §§ 502 and 506 of the Bankruptcy Code, and (ii) the acknowledgements and stipulations contained above shall be binding on all parties-in-interest. Nonetheless, nothing in this Order shall be deemed to grant standing to any other party to commence any adversary proceeding or contested matter.

32.     Bokito Farming, LLC, agrees to maintain and properly insure the collateral of Bank of the West.

33.     The automatic stay under § 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order.

34.     Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

Signed on 11/10/2010

_Brenda T. Rhoades_                    SR

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Approved as to Form and Substance:

*/s/ Robert T. DeMarco*

**DeMarco•Mitchell, PLLC**
Robert T. DeMarco – TBN 24014543
Michael S. Mitchell – TBN 00788065
1255 W. 15th Street, 805
Plano, Texas 75075
(t) 972.578.1400
(f) 972.346.6791
robert@demarcomitchell.com
mike@demarcomitchell.com

*Proposed* **Counsel for Debtors
and Debtors-in-Possession**

**Bokito Farming, L.L.C.**
By: Rene' Coumans, Managing Member
3415 FM 1567 E.
Como, TX 75431

-and-

*/s/ Scott W. Everett*

**Haynes and Boone, LLP**
Scott W. Everett – TBN 00796522
John Middleton – TBN 24053742
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(t) 214.651.5000
(f) 214.651.5940
scott.everett@haynesboone.com
john.middleton@haynesboone.com

**Counsel for Bank of the West**

# EQUIPMENT

| LENDER | COLLATERAL |
|---|---|
| **DATCU Credit Union**<br>P.O. Box 827<br>Denton, Texas 76202<br>FAX: 940-442-5520<br>**Date of Loan:** May 3, 2010<br>**Listed as Lienholder on title**<br>**Obligor(s):** René H. Coumans | 2005 Chevrolet C2500<br>VIN: 1GCHC24G55E238031 |
| **Fifth Third Bank**<br>P.O. Box 630778<br>Cincinnati, OH 45263<br>FAX: 513-561-6711<br>**Date of Loan:** February 18, 2006<br>**Listed as Lienholder on title**<br>**Obligor(s):** René H. Coumans | GMC 2500 Pick Up |
| **Alliance Bank**<br>P.O. Box 500<br>100 West Jefferson Street<br>Sulphur Springs, TX 75483<br>FAX: 903-439-6724<br>**Date of Loan:** June 28, 2007<br>**Listed as Lienholder on title**<br>**Obligor(s):** René H. Coumans | 2006 Porsche SUV<br>VIN: A26210 |
| **Agriland, PCA**<br>Box 795<br>Sulphur Springs, TX 75483<br>FAX: 903-885-9346<br>**UCC-1 Filed:** August 10, 2004<br>**Amendment Filed:** October 20, 2004<br>**Continuation Statement Filed:** July 9, 2009<br><br>**Obligor(s):** René H. Coumans<br>Anne Coumans-Van de Vijver | 2004 Clayton Homes Mobile Home Mdl # Spirit III 56x14 Sn#CBH014007TX<br><br>2004 Clayton Homes Mobile Home Mdl # Spirit II 46x14 Sn#CBH014012TX<br><br>Added by Amendment:<br>2004 Clayton Homes Spirit III 14X56 Model #35SP114563AH05 Mobile Home Sn#CBH01423TX |



EXHIBIT 1

| | |
|---|---|
| **Agriland, PCA**<br>Box 795<br>Sulphur Springs, TX 75483<br>FAX: 903-885-9346<br>**UCC-1 Filed:** March 30, 2005<br>**Amendment Filed:** November 13, 2006<br>**Continuation Statement Filed:** November 24, 2009<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**NOTE:** November 13 Amendment added additional collateral<br>**Obligor(s):** René H. Coumans<br>Anne Coumans-Van de Vijver | 1992 Fiat-Allis Wheel Loader MDL#FR10B SN#611577<br>Fiat Tractor w/cab MFWD MDL#100-90 SN#353995<br>Jako Manure Tank, Pump, 3200 Gal. MDL#3200 SN#4824<br>Knight Pro Twin Slinger MDL#8030 SN#164<br>United Farm Tools Silage Wagon MDL#4200<br>United Farm Tools Silage Wagon MDL#4200<br>1992 Miedema Silage Dump Wagon MDL#HST 125 SN#92-5015<br>1200 Ft ABI Hose Reel w/Turbine Motor<br>Katolight PTO Generator MDL#55AVR3 SN#96509<br>10 Ft Great Plain No Till Drill SN#85-46U<br>14 Ft JD Tandem Disc SN#011011A<br>H&S 12 Wheel Rake SN#791631<br>1999 Case-IH Mower/Conditioner MDL#8312 SN#CFH0108694<br>1994 Dodge PU Diesel MDL#2500 SN#167K62603R5507294<br>1994 Case Tractor, Cab MWFD MDL#7210 SN#JJA0054436<br>2001 Case Skid Steer Loader MDL#1840 SN#361948<br>2000 Case Tractor, MWFD MDL#MX110 SN#13750<br>1999 Case Forage Chopper MFL#1500 SN#CFH0071720<br>Great Bend Loader MDL#860 SN#13750<br>Artsway Mixer Wagon MDL#1500 SN#AWSMIXL500990176<br>Houle 4" Verticle Agri-Pump, w/6" Pipe MDL#NIP SN#1903-02272-63018<br>OCMIS 100K PTO Pump Trailer Mounted SN#TV170SSL<br>1998 Case Tractor, MWFD, Cab MDL#MX150 SN#JJH0097023<br>**Additional Collateral:**<br>12Ft Scraper<br>2006 Neckover Drop Deck Cattle Trailer MDL 40ft X 7'6" SN#1NGL40216T263457<br>1995 Case Tractor MDL#9280 SN#JEE0033020<br>Degelman Dozer Blade SN#21711<br>Krause 30ft Chisel Plow<br>Bigham Brothers 8 Leg Parratill SN#7305013 |
| **Alliance Bank**<br>100 West Jefferson Street<br>Sulphur Springs, TX 75483<br>FAX: 903-439-6724<br>**UCC-1 Filed:** April 15, 2005<br>**Continuation Statement Filed:** December 30, 2009<br>**Obligor(s):** René H. Coumans | Rake #002245<br>Kuhn Tedder #A2155<br>Case Tractor #025061 |
| **CNH Capital America, LLC**<br>100 Brubaker Avenue<br>New Holland, PA 17557<br>FAX: 866-585-0286<br>**UCC-1 Filed:** March 6, 2007<br>**Obligor(s):** René H. Coumans | CASEIH 9250 Tractor JEE34512 DEGELM 7200 Blade 112205 |
| **Alliance Bank**<br>P.O. Box 500<br>100 West Jefferson Street<br>Sulphur Springs, TX 75483<br>FAX: 903-439-6724<br>**UCC-1 Filed:** April 10, 2007<br>**Obligor(s):** René H. Coumans | New Mixer Wagon Triollett 3200 ZK #09675 |

| | |
|---|---|
| **Legacy, FLCA**<br>P.O. Box 468<br>303 Connally Street<br>Sulphur Springs, TX 75482<br>FAX: 903-885-0886 | Case IH 8580 4x4 Square Baler #CFH0026858. |
| **UCC-1 Filed:** June 1, 2007<br>**Amendment Filed:** June 24, 2010<br>**NOTE:** Amendment added collateral<br>**Obligor(s):** René H. Coumans | **Additional Collateral:** Case MX100 4wd tractor with Great Bender loader, John Deere 7405 135 HP Tractor with John Deere Loader, 2005 JX95 Tractor #JO23996 with 2005 Case LX132 Loader #CAE020080 |
| **CNH Capital America, LLC**<br>100 Brubaker Avenue<br>New Holland, PA 17557<br>FAX: 866-585-0286<br>**UCC-1 Filed:** June 21, 2007<br>**Obligor(s):** René H. Coumans | CASEIH 7150 Tractor JJA0045824 |
| **Diversified Financial Services, LLC**<br>14010 First National Bank Pkwy, Suite 400<br>Omaha, NE 68154<br>FAX: 888-922-4634<br>**UCC-1 Filed:** September 18, 2007<br>**Obligor(s):** René H. Coumans | New Model 8000 Valley Pivot 747' 4T; New Model 4500M Cadman Hard Hose Drag Reel w/ Cadman 6003 3-Point Hose Caddy with 1320' 6" Hose & Cadman 2-nozzle Manure Boom; 1 New John Deere Engine, New 40KW John Deere Genset on Trailer, 30HP Floating Pump; 1600' 6" PIP PVC, 800' 8" IPS, 900' #6 Wire, Misc. Valves & Fittings; 10500' 10" IPS Pipe, 2500' #6 Wire; New Model 8000 Valley Pivot 800' 4-Tower. |
| **Alliance Bank**<br>P.O. Box 500<br>100 West Jefferson Street<br>Sulphur Springs, TX 75483<br>FAX: 903-439-6724<br>**UCC-1 Filed:** October 23, 2007<br>**Obligor(s):** René H. Coumans | New Triolielt 3200 Feed Wagon #10429-05, New Meyer 8865T Manor Wagon #088865300 |
| **CNH Capital America, LLC**<br>100 Brubaker Avenue<br>New Holland, PA 17557<br>FAX: 866-585-0286<br>**UCC-1 Filed:** February 29, 2008<br>**Obligor(s):** René H. Coumans | CASEIH 115 Tractor Z7BE02686 CASEIH 115,Tractor Z7BE02860 CASEIH 115 Tractor Z7BE02680 CASEIH 115 Tractor Z7BE02838 CASEIH 110 Tractor Z7BE03001 |
| **CNH Capital America, LLC**<br>100 Brubaker Avenue<br>New Holland, PA 17557<br>FAX: 866-585-0286<br>**UCC-1 Filed:** March 20, 2008<br>**Obligor(s):** René H. Coumans | CASEIH 125 Tractor Z8BE02184 |

| **CNH Capital America, LLC**<br>100 Brubaker Avenue<br>New Holland, PA 17557<br>FAX: 866-585-0286 | | CASEIH JX80 Tractor HFJ051272 CASEIH JX60 Tractor HFJ051272<br>CASEIH JX60 Tractor HFJ051095 CASEIH LX730 Loader Y7WLE4709<br>CASEIH LX720 Loader Y7WLA4306 |
|---|---|---|
| **UCC-1 Filed:** | May 8, 2008 | |
| **Obligor(s):** | René H. Coumans | |
| **Alliance Bank**<br>P.O. Box 500<br>100 West Jefferson Street<br>Sulphur Springs, TX 75483<br>FAX: 903-439-6724 | | New Sprayer Equipment #8004 VS21353-24 Controller #SCS 44- AECK |
| **UCC-1 Filed:** | June 2, 2008 | |
| **Obligor(s):** | René H. Coumans | |
| **Alliance Bank**<br>P.O. Box 500<br>100 West Jefferson Street<br>Sulphur Springs, TX 75483<br>FAX: 903-439-6724 | | Triloliet 3200 Feed Wagon #10429-05 Meyer 8865T Manure Wagon<br>#088865300 Case Tractor #025061 Rake #002245 Kuhn Tedder<br>#A2155 Triollett 3200 ZK Mixer Wagon #09675 Sprayer Equipment<br>#8004 VS 21353-24 Controller #SCS 440 AECK |
| **UCC-1 Filed:** | July 11, 2008 | |
| **Obligor(s):** | Bokito Farming, LLC | |
| **Diversified Financial Services, LLC**<br>14010 First National Bank Pkwy, Suite 400<br>Omaha, NE 68154<br>FAX: 888-922-4634 | | 1 New 2008 Model 8000 Valley Pivot 567' 3-Tower, 700' 6" PVC, 900'<br>#6 Wire, 2 Surge Tanks, Rotophase, Misc. Valves & Fittings. |
| **UCC-1 Filed:** | September 4, 2008 | |
| **Amendment Filed:** | September 4, 2008 | |
| **NOTE:** Amendment restated collateral | | **Restated Collateral Description:** 1 New 2008 Model 8000 Valley Pivot<br>567' 3-Tower, 700' 6" PVC, 900' #6 Wire, 2 Surge Tanks, Rotophase,<br>Misc. Valves & Fittings, 400' 6" PVC, 400' #6 Wire w/ 12/2, Surge<br>Tank. |
| **Obligor(s):** | René H. Coumans | |
| **VFS US LLC**<br>P.O. Box 26131<br>Greensboro, NC 27402<br>FAX: 336 931 4008 | | 2008 Volvo L45 Serial Number ending in the last (4) numeric digits of<br>3011 with the following attachments: 94" Volvo Bucket s/n 94072;<br>together with all parts, accessories, attachments, substitutions,<br>repairs, improvements and replacements and any and all cash and<br>non-cash proceeds thereof, including, without limitation, insurance<br>proceeds. |
| **UCC-1 Filed:** | October 22, 2008 | |
| **Amendment Filed:** | October 24, 2008 | |
| **NOTE:** October 24 Amendment corrected address of obligor. | | |
| **Obligor(s):** | Bokito Farming, LLC | |
| **VFS US LLC**<br>P.O. Box 26131<br>Greensboro, NC 27402<br>FAX: 336 931 4008 | | 2008 Volvo L45 Serial Number ending in the last (4) numeric digits of<br>2245 with all the standard attachments; together with all parts,<br>accessories, attachments, substitutions, repairs, improvements and<br>replacements and any and all cash and non-cash proceeds thereof,<br>including, without limitation, insurance proceeds. |
| **UCC-1 Filed:** | April 20, 2009 | |
| **Obligor(s):** | Bokito Farming, LLC | |

| | |
|---|---|
| **CNH Capital America, LLC** | |
| 100 Brubaker Avenue | |
| New Holland, PA 17557 | CASEIH 85U FARMALL Z9JL02372 CASEIH LX730 Loaders Y8WLE5089 |
| FAX: 866-585-0286 | |
| **UCC-1 Filed:** | July 3, 2009 |
| **Obligor(s):** | Bokito Farming, LLC |

| | |
|---|---|
| **CNH Capital America, LLC** | |
| 100 Brubaker Avenue | |
| New Holland, PA 17557 | CASEIH 85U FARMALL Z9JL02372 CASEIH LX730 Loaders Y8WLE5089 |
| FAX: 866-585-0286 | |
| **UCC-1 Filed:** | July 16, 2009 |
| **Obligor(s):** | Bokito Farming, LLC |

| | |
|---|---|
| **CNH Capital America, LLC** | |
| 100 Brubaker Avenue | |
| New Holland, PA 17557 | CASEIH 9250 Tractors 100PTO JCB0030720 Degelm 7200 Dozer Blade |
| FAX: 866-585-0286 | |
| **UCC-1 Filed:** | July 2, 2010 |
| **Obligor(s):** | René H. Coumans |

| | |
|---|---|
| **CNH Capital America, LLC** | |
| 100 Brubaker Avenue | |
| New Holland, PA 17557 | CASEIH 9330 Tractors 100PTO JEE0068910 Degelm 14-1 Blade 16037 |
| FAX: 866-585-0286 | |
| **UCC-1 Filed:** | September 17, 2010 |
| **Obligor(s):** | René H. Coumans |

# **REAL PROPERTY**

| **LENDER** | **COLLATERAL** |
|---|---|
| **Legacy, FLCA** | |
| P.O. Box 468 | |
| 303 Connally Street | |
| Sulphur Springs, TX 75482 | Refer to number "7" on Exhibit "A" for general location |
| FAX: 903-885-0886 | of the subject real property. |
| **Date of Loan:** Unknown as of Petition Date | |
| **Interest Rate:** Unknown as of Petition Date | |
| **Maturity Date:** Unknown as of Petition Date | |
| **Original Amount:** Unknown as of Petition Date | |

| Legacy, FLCA | | |
|---|---|---|
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "8" on Exhibit "A" for general location |
| FAX: 903-885-0886 | | of the subject real property. |
| **Date of Loan:** | Unknown as of Petition Date | |
| **Interest Rate:** | Unknown as of Petition Date | |
| **Maturity Date:** | Unknown as of Petition Date | |
| **Original Amount:** | Unknown as of Petition Date | |

| Legacy, FLCA | | |
|---|---|---|
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "9" on Exhibit "A" for general location |
| FAX: 903-885-0886 | | of the subject real property. |
| **Date of Loan:** | November 30, 2006 | |
| **Interest Rate:** | 7.4% | |
| **Maturity Date:** | November 1, 2026 | |
| **Original Amount:** | $168,300.00 | |

| Legacy, FLCA | | |
|---|---|---|
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "10" on Exhibit "A" for general |
| FAX: 903-885-0886 | | location of the subject real property. |
| **Date of Loan:** | Unknown as of Petition Date | |
| **Interest Rate:** | Unknown as of Petition Date | |
| **Maturity Date:** | Unknown as of Petition Date | |
| **Original Amount:** | Unknown as of Petition Date | |

| Legacy, FLCA | | |
|---|---|---|
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "11" on Exhibit "A" for general |
| FAX: 903-885-0886 | | location of the subject real property. |
| **Date of Loan:** | January 10, 2007 | |
| **Interest Rate:** | 7.45% | |
| **Maturity Date:** | January 1, 2027 | |
| **Original Amount:** | $178,500.00 | |

| Legacy, FLCA | | |
|---|---|---|
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "12" on Exhibit "A" for general |
| FAX: 903-885-0886 | | location of the subject real property. |
| **Date of Loan:** | April 18, 2007 | |
| **Interest Rate:** | 8.5% | |
| **Maturity Date:** | April 1, 2027 | |
| **Original Amount:** | $276,200.00 | |

| | | |
|---|---|---|
| **Legacy, FLCA** | | |
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "13" on Exhibit "A" for general |
| FAX: 903-885-0886 | | location of the subject real property. |
| **Date of Loan:** | August 17, 2007 | |
| **Interest Rate:** | 7.65% | |
| **Maturity Date:** | **August 1, 2027** | |
| **Original Amount:** | $482,600.00 | |

| | | |
|---|---|---|
| **Legacy, FLCA** | | |
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "14" on Exhibit "A" for general |
| FAX: 903-885-0886 | | location of the subject real property. |
| **Date of Loan:** | January 11, 2008 | |
| **Interest Rate:** | 7% | |
| **Maturity Date:** | January 1, 2028 | |
| **Original Amount:** | $453,400.00 | |

| | | |
|---|---|---|
| **Legacy, FLCA** | | |
| P.O. Box 468 | | |
| 303 Connally Street | | |
| Sulphur Springs, TX 75482 | | Refer to number "15" on Exhibit "B" for general |
| FAX: 903-885-0886 | | location of the subject real property. |
| **Date of Loan:** | October 15, 2008 | |
| **Interest Rate:** | 0.25% over prime | |
| **Maturity Date:** | February 1, 2024 | |
| **Original Amount:** | $275,000.00 | |

| | | |
|---|---|---|
| **Dan Wayne Humphrey** | | |
| 632 Beth Lane | | |
| Sulphur Springs, TX 75482 | | |
| FAX: | | Refer to number "1" on Exhibit "A" for general location |
| **Date of Loan:** | May 22, 2006 | of the subject real property. |
| **Interest Rate:** | 8% | |
| **Maturity Date:** | May 22, 2026 | |
| **Original Amount:** | 1,400,000.00 | |

| | | |
|---|---|---|
| **Agriland, PCA** | | |
| P.O. Box 120010 | | |
| Tyler, TX 75712 | | |
| FAX: 903-885-9346 | | Refer to number "5" on Exhibit "A" for general location |
| **Date of Loan:** | July 6, 2007 | of the subject real property. |
| **Interest Rate:** | 8% | |
| **Maturity Date:** | July 1, 2012 | |
| **Original Amount:** | $20,565.00 | |



SOUTH

LEASE rent Fisher 60 acres

rent Web
73 acres

Belle Vue dairy 164 acres
Legacy

7
8   BELLE VUE DAIRY
13   16
9

land Cooksey 50 acres
Legacy

Bank of The West
326 acres

HW 69

land Shelton 195 acres
Legacy

14

Land Flora 110 acres
Legacy

12

rent Web  170 acres

Land Irving 117 acres
Legacy

10

rent Web  85 acres

WINNSBORO          HW 11          SULPHUR SPRINGS

HW 69

NORTH

EXHIBIT "A"

SOUTH

lease purchase
Humprey 55 acres



rent Web 55 acres

HW 69

lease purchase Humprey
100 acres

SONADOR DAIRY

Lease purchase
Humprey 300 acres

11

Land Price
70 acres
Legacy

Rent Moore 200 acres

NORTH

LEASE

PAGE 2 OF 2

INTERSTATE 30

TEXARKANA

DALLAS

| November 5, 2010 | | 11/1/10 | 12/1/10 | 1/1/11 |
|---|---|---|---|---|
| *Monthly increments* | | | | |
| | | | | |
| | | | | |
| Net Milk Check | | $ 395,000.00 | $ 498,000.00 | $ 571,590.00 |
| Calf Income | | $ 500.00 | $ 500.00 | $ 500.00 |
| Cow Sales | | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 |
| Patronage dividend | | | | |
| USDA | | | | |
| Other | | | | |
| **TOTAL CASH RECEIPTS:** | | *$ 410,500.00* | *$ 513,500.00* | *$ 587,090.00* |
| | | | | |
| Operating Disbursements by Vendor Type: | | | | |
| Feed | | $ 294,774.00 | $ 327,081.00 | $ 335,110.00 |
| Calf Raising | | $ 18,000.00 | $ 18,000.00 | $ 18,000.00 |
| Milk Hauling | | $ 17,657.64 | $ 23,559.69 | $ 23,885.40 |
| Employee & Payroll | | $ 38,743.28 | $ 38,743.28 | $ 56,614.92 |
| Payroll taxes | | $ 6,005.21 | $ 6,005.21 | $ 8,775.31 |
| Utilities | | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 |
| Insurance | | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Vet & Breeding, Testing & Trimming | | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 |
| Supplies | | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 |
| Fuel | | $ 9,500.00 | $ 9,500.00 | $ 9,500.00 |
| Repairs & Maintenance | | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 |
| Machine hire and custom work | | $ 18,000.00 | $ 9,000.00 | $ - |
| (i) Miscellaneous | | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 |
| | | *$ 445,180.13* | *$ 474,389.18* | *$ 494,385.63* |
| Non- Operating Disbursements: | | | | |
| Rent | | $ 3,166.67 | $ 3,166.67 | $ 3,166.67 |
| Property Taxes | | | | $ 30,000.00 |
| Legal & Professional Fees | | $ 3,000.00 | $ 3,000.00 | $ 5,750.00 |
| Tax and licenses | | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 |
| (ii) Member Draws and Members Medical Insurance | | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 |
| | | *$ 9,000.00* | *$ 9,000.00* | *$ 41,750.00* |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL CASH DISBURSEMENTS:** | | *$ 454,180.13* | *$ 483,389.18* | *536,135.63* |
| | | | | |
| AVAILABLE CASH FROM OPERATIONS THIS PERIOD: | | *$ (43,680.13)* | *$ 30,110.82* | *$ 50,954.37* |



EXHIBIT
2

# BANK OF THE WEST
## DAIRY APPRAISAL REPORT

**SUBJECT**

| | |
|---|---|
| NAME: | RENE COUMANS dba BELLE VUE & MOO TOWN LLC, I |
| ADDRESS: | 3415 FM 1567 E |
| CITY | COMO |
| COUNTY | HOPKINS |
| STATE | TX |
| ZIP | 75431 |
| PHONE: | 903-348-9908 (cell) |

| | |
|---|---|
| BANK OFFICE: | AGMAD |
| BANK OFFICE NO. | 10370 |
| ACCOUNT OFFICER: | DEBRUYN |
| APPRAISER: | BLODGETT |
| APPRAISAL DATE: | 08/11/10 |

FOR BOTW AFO USE ONLY

LOG NO: 643-10

Run Date: 11/2/10

**BREED:** MIXED

### CATTLE APPRAISAL

| NUMBER | DESCRIPTION | AGE | AVERAGE WEIGHT | VALUE/ HEAD ($) | VALUE | BRAND & LOCATION |
|---|---|---|---|---|---|---|
| 2002 | HOLST/JERS COWS MILKING | 2 - 8 YRS. | 1200 | $ 1,150 | $ 2,302,300 | NONE |
| 1075 | HOLST/JERS COWS DRY | 2 - 8 YRS. | 1200 | $ 1,150 | $ 1,236,250 | |
| 181 | HOLST/JERS SPRINGERS | 22 MOS. + | 1050 | $ 1,350 | $ 244,350 | |
| 918 | HOLST/JERS HEIFERS, BRED | 16-22 MO. | 900 | $ 1,110 | $ 1,018,980 | |
| 244 | HOLST/JERS HEIFERS, B & B | 13-15 MO. | 725 | $ 980 | $ 239,120 | |
| 249 | HOLST/JERS HEIFERS | 9-12 MO. | 570 | $ 900 | $ 224,100 | |
| 214 | HOLST/JERS HEIFERS | 7-8 MO. | 425 | $ 790 | $ 169,060 | |
| 173 | HOLST/JERS HEIFERS | 5-8 MO. | 325 | $ 680 | $ 117,640 | |
| 381 | HOLST/JERS HEIFERS | DROP-4 MOS. | 180 | $ 450 | $ 171,450 | |
| 47 | BREEDING BULLS | 2-4 YRS | 1200 | $ 580 | $ 27,260 | |
| | | | | $ | | |

| 5,484 | |
|---|---|

| | | |
|---|---|---|
| HERD VALUE | | $5,750,510 |
| ALL BOTW HERD LOANS | $ 4,838,311 | ON DATE OF APPR. |
| BOTW HERD EQUITY/(SHORTAGE) | $ 912,199 | |
| BOTW HERD LOAN TO VALUE | 84% | |
| ALL OTHER HERD LOANS | | ON DATE OF APPR. |
| TOTAL EQUITY/SHORTAGE | $ 912,199 | |
| TOTAL HERD LOAN TO VALUE | 84% | |

### FEED INVENTORY

| DESCRIPTION | TONS | $/TON | VALUE |
|---|---|---|---|
| HAY | 320 | 99.38 | $ 31,800 |
| SILAGE | 7,000 | 50.00 | $ 350,000 |
| OFFSITE INVENTORY | - | | $ - |
| PREPAID FEED INVENTORY | - | | $ - |
| CASH INVESTMENT IN CROPS | | | $ 75,000 |
| | | | |
| CREDIT 50% OF NET MONTHLY MILK CHECK | | | $ 185,625 | MOST RECENT MO. |
| CONCENTRATES | $ - | SUBTOTAL ROUGHAGE INVENTORY | $ 642,425 |
| Concentrates paid for monthly are not included in feed inventory totals | | LESS ROUGHAGE PAYABLES | $ 35,000 | ON DATE OF APPR. |
| ROUGHAGE INVENTORY VERIFIED | 100% | TOTAL ROUGHAGE INVENTORY | $ 607,425 |
| | (of value) | | |

| | | |
|---|---|---|
| CURRENT FEED LOAN BAL. | $ 1,400,000 | ON DATE OF APPR. |
| CURRENT PREPAY LOAN BAL. | | ON DATE OF APPR. |
| FEED EQUITY/(SHORTAGE) | $ (792,575) | |
| FEED LOAN TO VALUE | 230% | |

Note: Feed payables listed are for roughage only. All other payables will be analyzed by the relationship manager.

### HERD INFORMATION

| | | | |
|---|---|---|---|
| COWS MILKING | 2,002 | TOTAL HEIFERS | 2,360 |
| COWS DRY | 1,075 | RATIO OF HEIFERS TO MILKING & DRY COWS | 77% |
| TOTAL MATURE COWS | 3,077 | | |
| PERCENT DRY COWS | 35% | LIVESTOCK VERIFIED | 100% |
| | | | (of value) |

### PRODUCTION INFORMATION

| PRODUCTION DATA | | POOL QUOTA INFORMATION | |
|---|---|---|---|
| TOTAL GALLONS/DAY | 9,312 | B.F. LBS./DAY | - |
| GALLONS/COW/DAY | 4.7 | S.N.F. LBS./DAY | |
| POUNDS/COW/DAY | 40.0 | RATIO | |
| CWT's/MONTH | 24,344 | EST. VALUE | |
| CREAMERY BASE MAX. PROD. (CWT's/MO.) | NONE | B.F. LBS. @ | $ - |
| BUTTER FAT | 3.95% | MILK SOLD AT QUOTA PRICE | 0% |
| SOLIDS NOT FAT | 8.90% | | |
| PROTEIN | 3.12% | TIMES MILKED PER DAY | 2 |
| CREAMERY: LONE STAR | | BST USAGE - % OF MILK COWS | 0% |

| OTHER INFORMATION | | | FACILITIES | |
|---|---|---|---|---|
| | | | | SEE COMMENTS |
| CATTLE ARE ALL LOCATED AT DAIRY FACILITY | SEE COMMENTS | (If NO, fill in chart below) | MILK PARLOR | NO |
| CATTLE APPEARED IN GOOD HEALTH AND CONDITION | SEE COMMENTS | (If NO, explain below) | AUTO TAKEOFFS | NO |
| FEED IS ALL LOCATED AT THE DAIRY | YES | | GRADED CORRALS | YES |
| MODERN FACILITY WITH MINIMAL OR NO DEFERRED MAINTENANCE | NO | | FREESTALLS | YES |
| FACILITIES ARE STATIC WITH NO CHANGES OR ADDITIONS | YES | | OPEN LOT - SHADES | YES |
| WASTEWATER MANAGEMENT - APPEARS TO BE IN COMPLIANCE | YES | | LOCKING STANCH. | YES |
| MANAGEMENT IS AVERAGE OR ABOVE | YES | | FLUSH GUTTERS | YES |
| HEIFER REPLACEMENT PROGRAM | EXCESS | (If SHORTAGE explain below) | COMMODITY BARN | YES |
| ACRES FARMED BY DAIRY | 300 | ACRES | HAY BARNS | YES |
| | | | SHOP | YES |
| | | | HOUSES | YES |
| | | | OVERALL CONDITION | FAIR |

| HEIFER INVENTORY | Verified | Not Verified | |
|---|---|---|---|
| DAIRY SITE | 2,360 | | |
| Offsite Location (Calf or Heifer Ranch) | | | Drop - 4 mo. |
| | | | 5 mo. to Springing |
| Totals | 2,360 | - | |

| | | |
|---|---|---|
| CALVING INTERVAL | 14.0 |
| SCC (000) | 600 |

SEE ATTACHED PAGE FOR COMMENTS:

Appraiser: _____ Date: 8/16/10

Dairy Loan Package V8
Last Updated 5/11/10

Reviewed by: _____ Date: 8/16/10 | AFO FEE $ 700.00

Coumans inspection 8.11.10.xls

EXHIBIT 3

# Position Report
### for
### Moo Town Dairy and Rene H. Coumans

Report for Month _____

Date Prepared _____

## Section I - Herd Overview

Beginning Milk Cows _____
Beginning Dry Cows _____
    **Total** _____

Required per Agreement not fewer than    **2,400**

## Section II - Monthly Herd Reductions
    Cows Culled Sold _____
    Other Cows Sold _____
    Death Loss _____
    **Total Reduction** _____

## Section III - Monthly Herd Additions
    Springers Added _____
    Cows that freshen _____
    Purchased animals _____
    **Total Additions** _____
Ending Milk Cows _____
Ending Dry Cows _____
    **Total** _____

## Section IV - Heifer Groups

Required per Agreement not fewer than    **2,250**

Springer Heifers (22 Months +) _____
Bred Heifers (16 - 22 Months) _____
Heifers (13 - 15 Months) _____
Heifers (9 to 12 Months) _____
Heifers (7 to 8 Months) _____
Heifers (5 to 6 Months) _____
Heifers (Drop to 4 Months) _____
    **Total** _____

## Section V - Milk Production for Month
    Total pounds produced for month _____

## Section VI - Silage and Hay Inventory
                         **Tons**
**Beginning Silage** _____
    Silage Fed    (Less) _____
    Silage Harvested (Add) _____
**Ending Silage**           **Total** _____

**Beginning Hay** _____
    Hay Fed (Less _____
    Hay Harvested (Add) _____
**Ending Hay**           **Total** _____

Prepared by: _____      Approved by: _____

EXHIBIT 4